**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN FREDERICK SIMPSON,** | : | **Civil No. 1:15-mc-297** |
| **t/a Warrior Ridge Trading and** | : | |
| **LCT Pro Shop,** | : | **(Judge Jones)** |
| | : | |
| **Petitioner** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **LORETTA E. LYNCH,** | : | |
| **Attorney General of the** | : | |
| **United States, et al.,** | : | |
| | : | |
| **Respondents** | : | |

**MEMORANDUM ORDER**

I.    **INTRODUCTION**

This is an action initiated by John Frederick Simpson seeking review of a decision by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to revoke his license to deal and manufacture firearms after ATF inspectors discovered that Simpson had committed over 400 violations of federal firearms laws during the four years in which he was licensed.  These alleged violations included failing to perform required background checks, failing to fully and accurately report transactions, and selling firearms away from licensed premises.

Finding that Simpson's willfully committed a great number of violations of the rules and regulations governing licensed firearms dealers, ATF revoked his license.

The sole question in this litigation is whether ATF was authorized to revoke Simpson's licenses.  Indeed, there does not appear to be a dispute over whether Simpson committed violations; the dispute is whether he committed those violations willfully.  The parties also do not really dispute that the Court's review of this matter is administrative in nature, and is narrow in its focus.  Nevertheless, Simpson has now come to the Court seeking expansive discovery from the Respondents, as if this were a traditional civil action, and seeking to compel the Respondents to provide more fulsome responses to discovery that he has propounded.  In doing so, Simpson has made arguments that suggest he perceives the nature of this litigation as akin to an ordinary civil action where broad discovery is permitted and appropriate.  The Respondents counter that there is no legitimate basis for the type of discovery that Simpson seeks to undertake in an action that is a narrow review of an administrative ruling, and has otherwise defended as adequate its production of discovery in response to Simpson's requests.

Upon consideration of the parties' briefs and the prevailing law in this field, we find in large measure that Simpson's discovery requests go beyond that which

is ordinarily permitted in civil actions of this type involving federal court review of agency decisions, and is almost entirely unwarranted.   More fundamentally, we find that Simpson has not justified the broad discovery that he now seeks, or explained persuasively its relevance to the narrow issues before the Court.[1] Accordingly, with a narrow exception that would allow for *in camera* review of certain documents that ATF produced in redacted form, Simpson's motion to compel will be denied.

## II.   PROCEDURAL BACKGROUND

On May 1, 2015, ATF notified Simpson that effective 15 days after receipt of notice, it was revoking his two federal firearms licenses ("FFLs"). (Administrative Record ("R") at 2-61.)[2]   On June 12, 2015, Simpson filed a Petition for Judicial Review, initiating this proceeding.  (Doc. 1.)  Simpson also moved for an emergency stay of the revocation of his FFLs, which the district court denied by order on July 14, 2015.  (Doc. 20.)  In its ruling, the district court

---

[1]   Although the legal issues presented in this action are indeed narrow, the Court does not mean to suggest that the issues are unimportant to Simpson.  Quite the contrary, the Court recognizes that the revocation of Simpson's licenses is something that directly affects his livelihood and is, therefore, of obvious significance to him personally.  We also recognize the broader societal significance of Simpson's claims in terms of the rights which must be afforded to private persons working in a regulated industry.

[2]   The Administrative Record has been made part of this proceeding and is available at Docs. 25-28.

observed that it was "not swayed by Petitioner's arguments concerning likelihood of success on the merits, given the numerosity and types of violations." (*Id.*, at 9.) Additionally, the Court specifically noted that it was not "persuaded by Petitioner's contention that he was inadequately trained by the ATF." (*Id.*)  Indeed, the district court went so far as to observe preliminarily that "playing fast and loose with the parameters of the [federal firearms laws] must be taken seriously and dealt with swiftly for the safety of the public." (*Id.*, at 10.)

Following these preliminary matters, the Respondents responded to the Petition for Judicial Review (Doc. 24.), and thereafter Simpson propounded upon the Respondents requests for admission, interrogatories and requests for production of documents.  These discovery requests were indeed broad and expansive.  For example, the requests for production of documents sought all documents relating to Simpson or his FFLs.  (Doc. 31-1, Ex. A., ¶¶ 1-2.)  The Respondents objected to the requested discovery on the grounds that it was both unnecessary and improper, but nevertheless provided responses to the requests for admission and interrogatories, and produced all ATF reports and exhibits that related to the agency's inspection of Simpson's licenses.  Finding the government's production inadequate, Simpson filed the instant motion after requesting a conference with the Court.

## III.   FACTUAL BACKGROUND

The facts relevant to this dispute, and  ATF's decision to revoke Simpson's two FFLs, can be simply stated.  Simpson holds two FFLs, one of which permits him to deal in firearms, and one of which permits him to manufacture them.  (Doc. 2 ¶ 3.)  On April 3, 2014, ATF Industry Operations Investigator ("IOI") Susan Whitman began a compliance investigation of Simpson's records and inventory pursuant to 18 U.S.C. § 923(g)(1)(C).  (Doc. 2 ¶ 22; R. 10.)  According to her report, the inspection "was the worst [she] ever conducted."   ®. 10, 402.)  Following her investigation, and based upon her findings, ATF made the decision to revoke Simpson's two FFLs.  ®. 6, 10.)  Simpson requested a review of the revocation decision pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74.  (Doc. 2 ¶ 27; R. 6.)  The hearing was held on January 28 and 29, 2015, during which time Simpson and ATF had opportunity to present and cross-examine witnesses of offer evidence.  (Doc. 2 ¶¶ 41, 45-46; R. 7-8.)  Following the hearing, and based on the evidence adduced during the hearing, the ATF Director of Industry Operations ("DIO") Juan Orellana issued Final Notices on May 1, 2015, revoking both of Simpson's licenses.  ®. 2, 32.)  In the revocation notices, DIO Orellana found that Simpson had willfully committed over 400 violations of

5

federal firearms law, thereby justifying the revocation of his right to deal and manufacture in firearms.  ®. 10-30.)

## IV.  <u>DISCUSSION</u>

### A.  Simpson's Request for Additional Discovery

The Petitioner seeks an order from the Court directing the Respondents to provide sweeping answers to a variety of discovery requests which the Petitioner contends are relevant and necessary to help him prepare a defense of this case.  It is not entirely clear how the Petitioner expects the discovery to aid him in this effort; since much of his argument seems to be built around notions of what is generally permitted of Plaintiffs and Defendants in typical civil litigation that his built around a practice of allowing parties to engage in broad discovery of matters relevant to their claims and defenses.  As the Respondents observe, however, Simpson does not cite to any case that actually addresses the proper scope of discovery proceedings in actions brought for review of ATF revocations under the Gun Control Act.  Such cases, including cases that have come before this Court and the Third Circuit Court of Appeals, *see, e.g., Taylor v. Hughes*, 2012 WL 4327035 (M.D. Pa. Sept. 20, 2012), *aff'd sub nom. In re Taylor*, 548 F. App'x 822 (3d Cir. 2013), it is clear that Simpson is not entitled to the full-blown discovery that he now wishes to undertake.

6

Simpson has requested review of ATF's decision to revoke his FFLs under 18 U.S.C. § 923(f)(3).  That section of the statute provides that individuals such as Simpson, who have had their FFLs revoked, may "file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such . . . revocation."  *Id.*  The section goes on to provide that "the court may consider any evidence submitted by the parties to the administrative proceeding whether or not such evidence was considered at the [administrative] hearing."  *Id.*  What the statute does not expressly state, or really even imply, is that in proceedings of this nature – judicial review of administrative decisions – parties shall typically be permitted to engage in wide-ranging discovery.

To the contrary, the Third Circuit has acknowledged quite the opposite, and has frequently observed that there is actually a presumption against this very discovery practice.  *See NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 195 (3d Cir. 2006); *see also Green/Guilford Envtl. Ass'n v. Wykle*, 94 F. App'x 876, 878 (3d Cir. 2004) ("As for the denial of additional discovery, judicial review of an administrative decision is generally limited to the administrative record except where there has been a strong showing of bad faith or improper

7

behavior or when the record is so bare that it prevents effective judicial review.") (internal quotation marks omitted).

This Court has previously considered this very issue in a similar case involving an administrative decision to revoke an FFL, and found the law clear that "district courts are not obligated . . . to consider evidence in addition to that presented during the administrative proceedings." *Taylor*, 2012 WL 4327035, at *5. Although there may be cases where some discovery is warranted and relevant, the Court found – consistent with other federal courts – that allowing additional discovery and the consideration of new evidence should generally be limited to those cases where "some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review." *Id.* (quoting *Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1076 (7th Cir. 2011)).

There are, therefore, limitations on the type and scope of discovery that should be authorized in cases such as this. Moreover, the district court is under no obligation even to consider new evidence; the statute is permissive. *See* 18 U.S.C. § 923(f)(3) ("district court "may" consider any evidence submitted by the parties, but statute does not expressly require the court to do so). Indeed, courts have typically found that good cause must appear in the record itself to warrant an evidentiary hearing. *See Shawano Gun & Loan, LLC*, 650 F.3d at 1076; *Cucchiara*

*v. Secretary of the Treasury*, 652 F.2d 28, 30, n.1 (9th Cir. 1981); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco & Firearms*, 348 F. Supp. 2d 1299, 1306 (S.D. Ala. 2004) ("Nonetheless, that the Gun Control Act provides for de novo review of administrative decisions is not to vest a firearm dealer with an absolute right to an evidentiary hearing in appealing from an adverse ATF decision. Case law is the contrary.").

Even in cases where a firearms licensee provides some "good reason" for the request that the Court consider evidence outside of the administrative record, the licensee generally needs to provide a showing as to why the additional discovery is necessary or warranted. When faced by a similar issue in *Taylor*, where the licensee sought to challenge ATF's finding that he committed violations "willfully," the Court observed that the licensee must specify "what information in ATF's possession has relevance to the issue of whether his violations were willful, and why such information is not equally available to him." *Id.* at *1, 7. Requiring such a showing of relevance is in accord with the manner in which other courts have considered arguments similar to the ones Simpson is making in this action. *See, e.g., Jennings v. Mukasey*, 511 F.3d 894, 900 (9th Cir. 2007) ("The general rule is that agency actions are to be judged on the agency record alone, without discovery. Although certain circumstances warrant supplementation none is

applicable here."); *Moreno v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,

__ F. Supp. 3d __, 2015 WL 1909897, at *5 (W.D. Tex. Apr. 13, 2015) (finding

that the petitioning licensee "does not allege with any particularity facts or

evidence which she claims case 'substantial doubt' on the government's decision,"

and, therefore, resolving the case on the administrative record); *Randy's Hunting &*

*Sport Ctr., Inc. v. Gilbert*, 2008 WL 5111896, at *3 (E.D. Mich. Dec. 2, 2008) (in a

case, like *Taylor*, where the licensee had disputed only "whether his violations of

the regulations were 'willful,'" denying discovery because the licensee "has not

shown that discovery will lead to relevant and material evidence.").

Moreover, we emphasize the narrowness of the scope of review with respect

to the actual merits of this litigation.  In short, the Court's task is "whether the

Attorney general was authorized to revoke the license[s]."  *Taylor*, 2012 WL

4327035, at *5.  This narrow scope of review is indeed satisfied upon a showing

that a licensee committed a single violation of the federal firearms laws.  *Id.* at *4.

As the Respondent emphasizes, however, in this case Simpson has acknowledged

that he committed many violations of these laws.  (Doc. 20, at 6; R. 692-704 (letter

from Joshua Prince acknowledging violations).  These matters really are not in

dispute.  Accordingly, it would appear that this action boils down to whether the

scores of violations that were documented were committed "willfully".  We agree

with the Respondent that it is difficult to perceive what evidence might be in the ATF's possession, other than that has already been presented, that would bear on the issue of willfulness that Simpson would not have equal or greater access to. *See, e.g., Harris News Agency, Inc. v. Bowers*, 2014 WL 4980825, at *2 (D. Neb. Oct. 3, 2014) ("[T]he plaintiff already possesses any facts bearing on [the issue of willfulness].  Specifically, the Plaintiff itself can state what it knew, what notice of received; and how or why it, though its responsible persons, acted or failed to act as it did.").

Indeed, the question of willfulness, the pivotal issue in this case, involves matters which are peculiarly within the province of the petitioner.  Willfulness is an issue that goes to the Petitioner's state of mind, and is a matter where the Petitioner possesses a unique insight into his own innermost thoughts.  In short, Petitioner actually knows more about his internal thought processes than the Respondents do.  Therefore, he does not need far-reaching discovery to reveal what he thought.

In addition to making the unpersuasive argument that he is entitled to broad discovery by virtue of this action being in federal court, Simpson specifically bases his claim to need discovery on his contention that ATF has been "deceptive" and has, therefore, disadvantaged him both here and in the administrative proceedings.

11

(Doc. 32, at 7.)   This argument is based upon alleged inaccuracies in IOI Whitman's testimony regarding representations that Simpson may or may not have made regarding his former employment as a law enforcement officer.  This dispute – to the extent it really even is a dispute – does not supply a persuasive justification for opening broad discovery in this administrative matter.  It appears that there is a disagreement over the import of an affidavit from a former Sheriff in Indiana regarding the nature and scope of Simpson's employment as a constable or other similar law enforcement officer in Marion County, Indiana, but even if there were such a dispute, the Petitioner has only argued that it goes to his credibility – something that he has effectively advocated on his own behalf.

More fundamentally, this minor controversy over Simpson's veracity regarding his prior employment in law enforcement has no substantive relevance to this case, since there is no indication in the record that DIO Orellana based his decision on allegedly false representations.   ®. 6-30.)   If anything, the record suggests that DIO Orellana and the Respondent have credited Simpson's past experience as a law enforcement officer, and even pointed to that experience when discrediting Simpson's arguments that he lacked knowledge regarding the laws he was found to have violated.  ®. 24, 29; Doc. 16, at 18.)

Simpson also argues that he needs discovery in order to verify whether the ATF had legal authority to conduct a warrantless search of his premises as part of its investigation.   We disagree.   This is not proper fact discovery in any event; whether or not ATF had the legal authority to conduct "warrantless" inspections is a matter of law, and is one that has for years been decided in favor of ATF.   *United States v. Biswell*, 406 U.S. 311 (19720; Doc. 18-1, at 5-6.)[3]   Simpson also appears to be seeking copies of laws and regulations relevant to ATF and the scope of its authority, but these documents are plainly available to Simpson through the ATF's website and in a paper form, and these legal citations have been provided to the Petitioner by the Respondents.   Simpson has not disputed this, and we do not find that he has persuasively demonstrated how this information is properly discoverable in this review of an agency decision.   For the same reasons, and because ATF was authorized legally to conduct the searches that it undertook by virtue of the fact that Simpson held FFLs, we reach the same conclusion with

---

[3]  Simpson seems to suggest that *Biswell* may no longer be controlling or persuasive law in this field, and as support for that suggestions refers the Court to *City of Los Angeles v. Patel*, No. 13-1175, 2015 WL 2473445, at *11 (U.S. June 22, 2015). Whatever arguable doubt that *Patel* may have cast upon *Biswell's* central holding regarding the legality of warrantless inspections by federal agents as part of inspections authorized by the Gun Control Act, the fact of the matter is that *Biswell* remains binding law and we are bound by its holding that such warrantless searches do not violate the Fourth Amendment.

respect to Simpson's arguments that he requires discovery to determine whether he actually consented to the inspections themselves.

Simpson also purports to need discovery to determine the actual number of violations that were found, and to verify that they are as numerous as stated in the revocation notice.  Here, too, we fail to perceive how this is proper discovery, since the issue in this case seems to be whether the violations he acknowledged committing were, in fact, committed willfully.  The number of the violations really is not in dispute in this action, and we are unclear as to what kind of discovery ATF could provide to show that Simpson did not commit any of the violations, since he has admitted to many of them.

Next, Simpson seeks discovery into "whether ATF's investigating field officers properly trained Petitioner on the Gun Control Act and what their notes reflect regarding their training."  (Doc. 32, at 6.)  Simpson does not explain in a persuasive way how this discovery is particularly probative of the issues before the Court, and it appears to be a new issue entirely, and one that Simpson did not previously identify as being in dispute after the respondent made a number of representations about the training that Simpson received.  (Compare Doc. 16, at 10-11 and Doc. 17, at 7-11.)  To the extent Simpson disputes the training that ATF claims he received, he would appear to be capable of doing so without requiring

14

notes and other documents from ATF personnel.  Indeed, like his state of mind, the state of Simpson's training and understanding of the law is something about which the Petitioner has unique knowledge.

Simpson also seeks discovery into "whether the ATF's investigating field officers recommended post-inspection revocation" and "whether the notes or reports of the ATF's investigating field officers contradict the final decision of ATF [D]IO Orellana." (Doc. 32, at 6.)  This assertion does not advance Simpson's claims, as it appears to be made in support of an argument that ATF officials may have come to differing conclusions, or to suggest that the Court should consider how different ATF personnel would have exercised the agency's discretion under the circumstances of Simpson's case.  In *Taylor* we confronted an identical argument, and concluded that "[b]ecause the Court's review is limited to whether the ATF's actions were 'authorized,' the evidence regarding how another official would have exercised the ATF's discretion under these circumstances is not helpful." *Taylor*, 2012 WL 4327035, at *7.  We find no reason to reach a different conclusion here.

For the foregoing reasons, we find unavailing Simpson's attempts to liken this action to a typical civil action, where broad discovery is typically allowed.  We

further find that Simpson has not persuasively or effectively argued that additional and broad discovery is necessary or appropriate.

### B.      Redacted Material

As it stands, ATF did respond to Simpson's discovery requests both with objections, and some extensive documentary production.  In their production, ATF provided Simpson with 639 pages of responsive material.   In so doing, ATF redacted some portions of that material.  Simpson commits most of his briefing to arguing that the Respondent's limited redactions were improper.  The Respondent maintains that these arguments should be disregarded since the discovery that was provided was already in excess of what was required or even potentially warranted in this case, and because the redactions were not only entirely appropriate but either privileged or even compelled under federal law.

Although we recognize ATF's broad discretion in this field, and its view that the discovery that it did produce already is well in excess of what Simpson was actually entitled to in this case, we do not find that the Respondent's arguments or the appropriateness of the redactions themselves can be assessed in a vacuum, and without review of the redacted material itself.  Accordingly, rather than analyze and respond to each of the government's substantive arguments as to why its redactions were warranted, privileged or even legally compelled, the Court will

16

direct the Respondent to furnish copies of the redacted documents that were produced to Simpson, together with unredacted copies of the same documents, so that the Court can make a determination as to whether the Respondents have an appropriate basis for withholding certain portions of documents that ATF determined could be produced in response to Simpson's request. After having reviewed this material, the Court will better be able to assess the Respondent's arguments made in support of the redactions that were made and render a final decision on this narrow aspect of Simpson's motion.

## D.   **ORDER**

Accordingly, the Petitioner's motion to compel is DENIED in part. The motion is denied to the extent it seeks to compel the Respondents to produce additional documents aside from those which have already been furnished. However, the Court will withhold a final decision on the appropriateness of the Respondents' redactions of the documents that have already been provided to Simpson. So that the Court can make an informed decision regarding the Respondents' redactions, on or before **May 26, 2016**, the Respondents shall provide the Court with redacted and unredacted copies of the material that was previously produced to Simpson. Following review of that material, the Court will rule on Simpson's request that he be provided unredacted copies.

So Ordered this 27th  day of April 2016.


                        ***/s/  Martin C. Carlson***_____

                        Martin C. Carlson
                        United States Magistrate Judge